**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| PIER ANGELA PARKER, | ) | |
|      Plaintiff, | ) | |
| | ) | |
|      v. | ) | CAUSE NO.: 2:15-CV-316-JEM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|      Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Pier Angela Parker on August 25, 2015, and a Brief in Support of Plaintiff's Motion for Summary Judgment [DE 18], filed by Plaintiff on February 11, 2016. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On May 17, 2016, the Commissioner filed a response, and on June 15, 2016, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.      Procedural Background**

Plaintiff filed an application for disability insurance benefits and for supplemental security income with the U.S. Social Security Administration ("SSA") alleging that she became disabled on August 15, 2009. Plaintiff's application was denied initially and upon reconsideration. On September 19, 2014, Administrative Law Judge ("ALJ") William E. Sampson held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On February 11, 2015, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant met the insured status requirements of the Social Security Act through March 31, 2015.

2.	The claimant has not engaged in substantial gainful activity since February 3, 2012.

3.	The claimant had severe impairments: obesity, asthma, dextroscoliosis of the thoracic spine, fibromyalgia, chronic diverticulitis and borderline intellectual functioning.

4.	The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix .

5.	The claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours of an 8 hour workday and sit for about 6 hours of an 8 hour workday. She is occasionally able to climb ramps/stairs, balance, stoop, crouch, kneel, and crawl. She should avoid concentrated exposure to heat, extreme cold, and wet, slippery, or uneven services, and pulmonary irritants. The claimant should avoid concentrated exposure to workplace hazards such as dangerous machinery and unprotected heights. She is limited to simple, routine, and repetitive tasks and would require a job with a flexible pace. She would be able to perform a job with production pace work, such as an assembly line.

6.	The claimant is unable to perform any past relevant work.

7.	The claimant was 50 years old, defined as an individual closely approaching advanced age, on the amended disability onset date.

8.	The claimant has at least a high school education and is able to communicate in English.

9.	Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules support a finding that the claimant is not disabled.

10.	Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform.

11.	The claimant has not been under a disability as defined in the Social Security Act from February 3, 2012, through the date of the decision.

On July 24, 2015, the Appeals Council denied Plaintiff's request for review, leaving the

ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard.  *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.  *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).  Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence."  *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618

(7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)).  "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence.  *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).  An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review."  *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.    Analysis

Plaintiff has been diagnosed with borderline intellectual functioning, asthma, abdominal pain from gastroesophageal reflux disease and inflammatory bowel disease, arthritis of the spine, and fibromyalgia, and is obese.  Plaintiff argues that the ALJ's credibility assessment and assessment of her residual functional capacity ("RFC") contained errors.  The Commissioner argues that the ALJ's opinion was supported by proper evidence.

A.    RFC

Plaintiff argues that the ALJ failed to properly consider several of Plaintiff's impairments, alone and in combination. The Commissioner argues that the ALJ adequately assessed Plaintiff's impairments and determined her RFC.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff argues that the ALJ failed to assess all of Plaintiff's symptoms and impairments and

did not address Plaintiff's impairments in combination. The ALJ found that Plaintiff had severe impairments of obesity, asthma, dextroscoliosis of the thoracic spine, fibromylagia, chronic diverticulitis, and borderline intellectual functioning. He stated generally that he considered Plaintiff's obesity in combination with her other impairments, but Plaintiff argues that he did not consider the rest of her impairments in combination, nor to address how her IBS and fatigue would affect her RFC.

"Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In particular, Plaintiff argues that the ALJ failed to consider the combination of fibromyalgia, hypothyroidism, and obesity, all of which contribute to fatigue. Likewise, Plaintiff argues that Plaintiff's obesity is likely to exacerbate pain symptoms caused by fibromyalgia and dextroscoliosis. "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted), and the Court

notes that in this case the ALJ concluded that Plaintiff's obesity *was* a severe impairment, making the determination even more important. *See also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* (citing SSR 96-8p). In this case, the ALJ included a single statement that "the claimant's obesity was considered in relation so the musculoskeletal, respiratory, and cardiovascular body systems listings as required by the Ruling" and limited Plaintiff to light work with postural limitations. However, the ALJ did not create a logical bridge from the bare statement that he considered Plaintiff's obesity in combination with other limitations and what specific conclusions he came to regarding the limitations they cause.

Plaintiff also argues that the ALJ erred in failing to consider her fatigue, either on its own or in connection with her other impairments. Dr. Anigbogu opined that Plaintiff was impaired by chronic fatigue. The ALJ found that it was not a medically determinable impairment on its own, but that Plaintiff's fatigue was related to her other impairments. He did not, however, explain how her symptoms of fatigue would affect her ability to sustain work when considered in combination with her other impairments or address how Plaintiff's repeated reports of fatigue were incorporated into the RFC, if at all. Similarly, Plaintiff also argues that the ALJ failed to discuss Plaintiff's IBS or

how her need to be near a restroom and use it frequently during an episode. Obviously, gastrointestinal symptoms, even if not severe in themselves, could, especially in combination with her other impairments, have an impact on Plaintiff's ability to work. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski*, 322 F.3d at 917 ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

On remand, the ALJ is directed to consider all of Plaintiff's impairments, alone and in combination, and to specifically address the impact her obesity, fatigue, and IBS have on her other impairments and her ability to perform work.

B.    Credibility

The ALJ found that Plaintiff was less than fully credible because of her treatment history and her work history. He also found the testimony of Plaintiff's son less than credible because of his relationship with her. The Commissioner argues that the ALJ's evaluation was not patently wrong.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, but "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir.2009)).

The ALJ found Plaintiff less than credible in part because she did not attend as many physical therapy appointments as authorized by her insurance and was not participating in pain management or the types of pain medication the ALJ thought would be appropriate. Plaintiff argues that the ALJ did not ask Plaintiff about her physical therapy appointments or pain medication regime, and did not credit the pain medications Plaintiff did take. "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012); *see also Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("[T]he ALJ must not draw any inferences about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quotation omitted).

In this case, Plaintiff points out the difference between the physical therapy treatment the insurance company pre-approved and what her medical providers actually recommended, and the ALJ's lack of questions about the discrepancy. Similarly, the ALJ stated that Plaintiff had not been participating in pain management or prescribed significant pain medication without asking Plaintiff about it or crediting the lack of success she had seen with what medication she had been prescribed, including a nerve block. Despite the ALJ's statement that no one has declined to treat Plaintiff

because of her lack of funds, the record in this case includes several indications that Plaintiff had financial difficulties that affected her medical care. However, the ALJ did not take Plaintiff's financial difficulties into account in his analysis of her credibility and did not ask Plaintiff her reasons for not pursuing what he apparently considered more appropriate treatment. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.").

Plaintiff also argues that the ALJ's inconsistent statements about Plaintiff's work history make it difficult to determine how her attitude toward work affected his credibility determination. On one hand, the ALJ noted that Plaintiff continued to work and to seek employment after her alleged onset date, but also stated that her motivation to obtain work was questionable. A claimant's attempts to work even after the alleged disability onset date do not mean that she is not disabled. As the Seventh Circuit has noted, "even persons who *are* disabled sometimes cope with their impairments and continue working long after they might have been entitled to benefits." *Shauger*, 675 F.3d at 697; *see also Gentle*, 430 F.3d at 867 ("A person can be totally disabled for purposes of entitlement to social security benefits even if, because of an indulgent employer or circumstances of desperation, he is in fact working."). Likewise, "[a] desperate person might force herself to work – or . . . certify that she is able to work – but that does not necessarily mean she is not disabled." *Richards v. Astrue*, 370 F. App'x 727, 732 (7th Cir. 2010) (citing *Gentle*, 430 F.3d at 867; *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir.2003)). The ALJ also noted that Plaintiff had no earnings for several years while she was married, but does not address

Plaintiff's testimony that she was helping her husband with his business or otherwise explain how this work history makes Plaintiff's claims of pain and disability less than credible.

Plaintiff also argues that the ALJ erred in rejecting the report of Plaintiff's son. The Commissioner argues that the ALJ thoroughly considered Plaintiff's son's statement and justified his reasons for giving it little weight.        The ALJ stated that he gave little weight to Plaintiff's son's opinion because the son "wanted his mother to be granted financial assistance" and "is not an objective source due to his familial relationships with the claimant." However, the ALJ is required to properly consider even familial evidence. *See* 20 C.F.R. § 404.1513(d)(4) ("In addition to evidence from the acceptable medical sources . . . we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include . . . (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy."). The ALJ did explain that he gave little weight to the son's statements, but did not address how the son's opinion supported or were inconsistent with other evidence in the record. SSR 06-03P, 2006 WL 2329939, *4 (Aug. 9, 2006) (requiring the ALJ to address factors such as: "How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; [and] Whether the source has a specialty or area of expertise related to the individual's impairment(s)"). Other than stating that Plaintiff's son was not objective, the ALJ did not specifically address how his statements were consistent with other evidence in the record, leaving the Court unable to determine whether the ALJ adequately considered the record as a whole. *See* 20 C.F.R. § 404.1529(c)(3); *Shideler*, 688 F.3d at 311.

There are a number of errors in the ALJ's assessment of Plaintiff's credibility, and on remand, the ALJ is directed to thoroughly explain his credibility assessment in accordance with the applicable regulations.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 18], and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 22nd day of August, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record